# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tracy Reynolds Creekmore, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:14-3019-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on July 23, 2015, recommending that the Commissioner's decision be reversed and remanded because of the failure of the Appeals Council to consider and weigh new medical opinions of one of Plaintiff's treating specialist physicians timely submitted by Plaintiff's counsel after the decision of the Administrative Law Judge ("ALJ"). (Dkt. No. 22). The R & R further recommended that the Court deny relief on other claims asserted by Plaintiff, including Plaintiff's objection to the evaluation of the opinions of treating and non-treating physicians under the Treating Physician Rule. (*Id.*). The Commissioner filed a response indicating that she would not file objections to the R & R. (Dkt. No. 24). After a careful review of the voluminous record in this matter, the R & R and the applicable legal standards, the Court adopts all portions of the R & R except Section

2 (Dkt. No. 22 at 21-28), reverses the decision of the Commissioner and remands the matter to the agency, as further explained below.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the

Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work . . . ." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." SSR 96-8p, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is

deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. § 404.1527(c)(1)-(5). The Commissioner pledges "[g]enerally we give more weight to opinions from . . . treating sources" and more weight to the opinions of an examining source than a non-examining source. § 404.1527(c), (c)(1). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the

weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining and non-treating expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). The new evidence offered to the Appeals Council is then supposed to be made part of the administrative record. The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented

evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

## Factual Background

Plaintiff applied for disability insurance benefits for the period on and after July 15, 2007. Plaintiff's claims are primarily based on her long history of diagnosed psychiatric disorders, including anxiety, depression and bipolar disorder. Tr. 494-501, 522-23, 1327, 1333, 1374, 1375-79, 1385-86. Plaintiff's initial administrative hearing regarding her disability application was held on August 21, 2009, and the ALJ recommended denial of the claim after giving little weight to the opinions of Plaintiff's treating specialist physician, Dr. Khizar Khan. Tr. 16-24. Subsequent to the ALJ's decision, Plaintiff submitted to the Appeals Council additional medical records, including new and material treatment records of Dr. Khan and Plaintiff's longstanding family physician, Dr. Jackson Bruce. The Appeals Council declined to conduct a review of Plaintiff's case and made no effort to weigh the newly submitted medical opinions or to reconcile them with inconsistent medical opinions the ALJ had credited in denying Plaintiff's disability claim. This Court reversed the decision of the Commissioner by order date July 13, 2012, finding that the failure of any fact finder to weigh and reconcile the newly presented conflicting

medical opinions required reversal under *Meyer v. Astrue*, 662 F.2d at 705-06. *Creekmore v. Astrue*, 5:11-cv-00256, 2012 WL 2874013 (D.S.C. July 13, 2012).

## Discussion

### A. The failure of any fact finder to weigh the new and material medical opinions offered to the Appeals Council by Plaintiff's counsel by letter dated November 19, 2012, mandates reversal and remand.

Following the decision of the ALJ of October 4, 2012, Plaintiff's counsel submitted to the Appeals Council two letters, dated November 9 and November 19, 2012. The November 19, 2012 correspondence included responses to a questionnaire prepared and signed by Plaintiff's primary treating specialist physician, Dr. Khan, which specifically addressed and challenged medical opinions provided by a non-examining and non-treating physician, Dr. Alfred G. Jonas, at the administrative hearing. (Dkt. Nos. 16 at 23-24; 16-1 at 3-5). A review of the administrative record indicates that the November 9, 2012 letter was made part of the record, but the November 19, 2012 letter is not included and was not referenced by the Appeals Council in denying Plaintiff's requested review. Tr. 838-841, 866-875.

The Magistrate Judge, after reviewing the full record in this matter, concluded that there was no evidence the Appeals Council considered the new and material medical opinions included in the November 19, 2012 correspondence. (Dkt. No. 22 at 21). The Magistrate Judge recommended the decision of the Commissioner be reversed and remanded to consider this new and material evidence. *Id.* The Commissioner advised the Court that she did not intend to file an objection to the R & R. (Dkt. No. 24).

The recommendation of the Magistrate Judge is clearly correct that a failure of any fact finder to weigh the new and material medical evidence offered in the November 19, 2012 correspondence and to reconcile it with other opinions in the record requires reversal and remand under *Meyer*. On remand, the ALJ must consider all medical opinions and, as discussed below, weigh those conflicting opinions under the standards set forth in the Treating Physician Rule.

**B.    The failure of the ALJ to weigh and reconcile the opinions of various physicians under the standards of the Treating Physician Rule requires reversal and remand.**

The voluminous administrative record in this matter, totaling nearly fourteen hundred pages, includes the opinions of three treating physicians, one non-treating examining physician and numerous non-examining and non-treating physicians. Under the provisions of the Treating Physicians Rule, the Commissioner generally accords more weight to treating physicians, recognizing that their clinical insights gathered from hands on treatment provides an "unique perspective" that cannot be obtained from a simple review of the written record or from one time examinations. § 404.1527(c)(2). Additional weight is provided to treating physicians with a long treatment history with the claimant and those with a medical specialty. § 404.1527(c)(1), (2)(i), (5).

The record contains more than 50 office notes documenting visits of Plaintiff with her treating psychiatrist, Dr. Khizar Khan, over a period extending from April 2006 until March 2012. Tr. 418-26, 495-501, 522-23, 526, 748-50, 757-760, 765-7, 790-91, 794, 797, 1245-56, 1316-24, 1374-79. Throughout Dr. Khan's treatment of Plaintiff, he diagnosed her with bipolar and anxiety related disorders and made numerous medication adjustments as she frequently fluctuated from having severe mood and anxiety related problems to episodic periods of relative

stability. For instance, Dr. Khan documented that in a January 2008 office visit Plaintiff was struggling with her mood swings and social isolation, but during a December 2008 office visit was smiling and reporting this was the best she had felt in a long time. Tr. 522, 748. Four months later, in April 2009, Dr. Khan recorded that Plaintiff was overwhelmed and unable to concentrate or deal with stress. Tr. 790-91. In the first half of 2010, Dr. Khan documented repeatedly Plaintiff's mania, depression, tearfulness and withdrawal, noting that she had ceased attending church and was barely functional. Tr. 797, 1249-54. In August 2010, Plaintiff reported a period of lesser anxiety and depression, but by late December 2010 she was again documented to be emotionally distracted, "panicky" and overwhelmed. Tr. 1245-46, 1322-23. At no time during Dr. Khan's more than five years of medical treatment did Plaintiff ever have a sustained period of stability regarding her mood and anxiety disorders.

Dr. Khan completed a questionnaire in March 2010 in which he rated her as "poor" in a broad range of job related areas, including the ability to handle stress, maintain attention and concentration and interact effectively with co-workers, supervisors or the public. Tr. 1242-44. He explained that Plaintiff's depression and mood disorders gave her a sense of being "overwhelmed" and she had "impaired attention/concentration." Tr. 1243. Dr. Khan reached similar conclusions in responses provided to questionnaires in March 2012, again explaining that Plaintiff "remains easily overwhelmed, depressed and anxious" and suffered from "ongoing panic attacks." Tr. 1357-1371. He explained that she had chronic conditions "with persistent emotional mood effects impairing ability to function." Tr. 1358.

Dr. Khan relocated his practice in the Spring of 2012 and referred Plaintiff to another psychiatrist, Dr. Kashfia Hossain. After evaluating Plaintiff initially in May 2012, he also

diagnosed her with bipolar affective disorder and depression and noted that she "decompensates with minimal stress." In July 2012, Dr. Hossain fully endorsed Dr. Khan's findings contained in his March 2012 evaluation. Tr. 1387.

Plaintiff's longstanding family physician, Dr. Jackson Bruce, also completed a questionnaire in July 2010 which also rated Plaintiff as "poor" in a broad range of job related areas, including ability to maintain attention and concentration, relate to others and handle stress. Tr. 811-14. Dr. Bruce's conclusions closely correspond with similar conclusions reached by Plaintiff's two treating psychiatrists, Dr. Khan and Dr. Hossain.

Plaintiff was also seen by a one-time examiner, Robin Moody, PhD., on August 23, 2011. Plaintiff described to Dr. Moody feelings of worthlessness, depression, anxiety and daily panic attacks. Tr. 1325-27. She noted that Plaintiff left her home about twice a week and her concentration during the examination was "somewhat impaired." Dr. Moody concluded that Plaintiff "did not appear to be exaggerating any symptoms." Dr. Moody diagnosed Plaintiff with bipolar disorder and "moderate panic disorder with agoraphobia" and that she had "occupational problems." Tr. 1327.

In addition to the three treating and one examining physician, the record reflects at least two non-examining and non-treating physicians offered opinions based solely on their review of the medical record. Unlike the treating and examining physicians, the medical chart reviewers gave limited credence to the Plaintiff's complaints and symptoms. Dr. Robert Estock, M.D., concluded Plaintiff did suffer from bipolar disorder and panic disorder and that she "can pay attention depending on her mood." Tr. 1330-42. Although he gave "great weight" to Dr. Moody's report, he found Plaintiff only "partially credible." Tr. 1342.

-10-

The other non-examining and non-treating physician who offered medical opinions in this matter was Dr. Alfred Jonas, who testified at the administrative hearing, apparently by telephone. Tr. 905-933. Dr. Jonas testified that he was a psychiatrist in private practice in Miami, Florida. Dr. Jonas attacked the treatment and opinions of Plaintiff's primary treating psychiatrist, Dr. Khan, claiming that there was "no support" for the longstanding diagnosis of bipolar disorder. Tr. 909, 919. He also claimed that Dr. Khan's opinions were "internally inconsistent" because he claimed the patient had severe impairments but opined the patient could handle her own finances. Tr. 910-12.

After summarizing the various medical opinions of the treaters, an examiner and two chart reviewers, the ALJ gave "little weight" to the opinions of any of the treating physicians, did not indicate the weight given to the one time examiner examiner, and relied almost exclusively on the opinions of the non-examining and non-treating physicians. Tr. 884-887. This effectively turned the Treating Physician Rule on its head, deferring to the opinions of physicians who had never laid eyes on the Plaintiff while dismissing the opinions of those who had examined and treated her dozens of times over many years.

The most striking example of this began at Step Two of the sequential analysis, when the ALJ omitted from Plaintiff's "severe" conditions the diagnosis of bipolar disorder. Tr. 881. This conclusion was reached despite the fact that every medical expert who treated Plaintiff or reviewed this file, except Dr. Jonas, had concurred in the diagnosis of bipolar disorder. Tr. 424-25, 813, 1327, 1333, 1375, 1382. The ALJ reached this remarkable conclusion with a single declarative sentence: "The medical expert testified that based on the evidence in the record, there is no medical support for claimant's alleged bipolar disorder." Tr. 882.

This is, of course, complete nonsense. Dr. Khan and Dr. Hossain, two trained and practicing psychiatrists, diagnosed Plaintiff repeatedly and consistently with bipolar disorder and the record is replete with Plaintiff's struggles with her mood disorder. *E.g.,* Tr. 424-25, 522, 526, 794, 801, 1248, 1250, 1382. Further, the idea that Dr. Jonas' statement, standing alone, is somehow sufficient to counter the opinions of all treaters because he is identified by the ALJ as a "[t]he medical expert" is a clear misapplication of the Treating Physician Rule. Just because Dr. Jonas happened to call into the administrative hearing and answer questions does not change his status as a non-examining and non-treating physician, which is the lowest regarded class of opinions offered in a Social Security disability hearing under the Treating Physician Rule. Dr. Jonas was not "the medical expert," but only one of many medical experts and one who was entitled under the Treating Physician Rule to the lowest level of weight and consideration.

This was not the only example of the ALJ's persistent failure to properly apply the Treating Physician Rule. When the opinions of Dr. Khan were evaluated, no special weight was given to the fact that he was (a) a treating physician; (b) a physician with a long treatment history; and (c) a specialist. Tr. 884-85. When the non-treaters and non-examiners' opinions were weighed, there was no indication that their opinions were given less weight because they were chart reviewers. Tr. 887. Dr. Hossain's opinions were dismissed with the observation that he had only treated the patient for a few months, without giving any weight to the fact that he was a treater and a specialist whose opinions closely corresponded to the opinions of Dr. Khan, who had treated Plaintiff for nearly six years. Tr. 886, 1387. Even though Dr. Hossain's opinions were dismissed because he had a relatively brief treatment history, no indication was given that the ALJ reduced the weight given to Dr. Jonas or Dr. Estock who had never treated

Plaintiff. Tr. 887. Similarly, Dr. Bruce, Plaintiff's long serving family physician, had his opinions dismissed because he was not a specialist without any indication of weight being given the fact that he was a treating physician with a long treatment history. Tr. 886.

This Court is not the first to raise questions regarding an ALJ's improper weighing of the expert opinions of Dr. Jonas' after he called into an administrative hearing to challenge the opinions of a claimant's treating physicians. In *Smith v. Astrue*, C.A. No. 09-cv-4999, 2011 WL 12533233 at *9 (E.D.N.Y. 2011), Judge John Gleeson reversed the denial of disability benefits and remanded the case to the agency because of the "improper weight" given the opinions of Dr. Jonas. Similarly, Judge Sandra Townes reversed a decision of the Commissioner denying disability in *Roman v. Astrue*, C.A. No. 10-cv-3085, 2012 WL 4566128 at *10, 14-15, 19 (E.D.N.Y. 2012), because of "improper application of the Treating Physician Rule" in the weighing of the opinions of Dr. Jonas, who again simply called into the hearing as a chart reviewer. This same conclusion was reached on a referred Social Security disability case to Magistrate Judge Michael Putnam in *Tobler v. Colvin*, C.A. No. 2:13-1095, 2014 WL 4187372 at *3-4 (N.D. Ala. 2014), who found that "an incorrect legal standard" was used in weighing the opinions of Dr. Jonas and the claimant's treating physicians.

In the course of reviewing the case law regarding Dr. Jonas' testimony, the Court came across what appeared to be a troubling pattern of the Social Security Administration repeatedly utilizing Dr. Jonas to attack the opinions and treatment of claimants' treating physicians.[1] Many

---

[1] In addition to the three court decisions cited above, the Court found references to Dr. Jonas' telephonic expert testimony against claimants in the following cases reported in Westlaw: *Rushing v. Astrue*, C.A. No. 12-2287, 2013 WL 5390022 (D. Kan. 2013); *Howeth v. Colvin*, C.A. No. 3:12-979, 2013 WL 7394880 (N.D. Tex. 2013); *Czarnionka v. Soc. Sec. Adm.*, C.A. No. 12-cv-417, 2013 WL 4048507 (D.N.H.); *Benson v. Colvin*, C.A. No. 11-11935, 2013 WL 1328084

of these cases where Dr. Jonas testified against the claimant involved, like this matter, a reversal of an earlier denial of Social Security disability by a district court and remand to the agency for a new administrative hearing. The frequency of Dr. Jonas' testimony on behalf of the Social Security Administration and against the claimant and his likely significant compensation for these services should be fully disclosed because they may be highly relevant to the weight and credibility given to Dr. Jonas' opinions.  The Court would look with grave concern on the use by the Social Security Administration of a "hired gun" expert to defeat the claims of potentially deserving claimants by systematically attacking the opinions and treatment of their treating physicians.  On remand, the ALJ is directed to obtain and provide the Plaintiff an itemized disclosure of Dr. Jonas' compensation and testimonial history on behalf of the Social Security Administration from 2010 to the present.[2]

## Conclusion

Based upon the foregoing, the Court hereby **ADOPTS** the R & R except for Section 2;

---

(D. Mass. 2013); *Swan v. Astrue*, C.A. No. 11-cv-482, 2013 WL 1314783 (D.N.H. 2013); *Baker v. Colvin*, C.A. No. 3:11-3497, 2013 WL 1103265 (N.D. Tex. 2013); *Lawrie v. Astrue*, C.A. No. 11-cv-3517, 2013 WL 867229 (E.D.N.Y. 2013); *Whitehead v. Astrue*, C.A. No. 11-11292, 2012 WL 5921045 (D. Mass. 2012); *Wise v. Astrue*, C.A. No. 11-0864, 2012 WL 3156763 (W.D. Mo. 2012); *Stenson v. Astrue*, C.A. No. 11-cv-1054, 2012 WL 1154400 (S.D. Cal. 2012); *Lappen v. Astrue*, 792 F. Supp.2d 98 (D. Mass. 2011); *Breingan v. Astrue*, C.A. No. 1:10-cv-92, 2011 WL 148813 (D.Me. 2011); *Kinnard v. Astrue*, C.A. No. 8:09-cv-828, 2010 WL 3584583 (M.D. Fla. 2010); *Machia v. Astrue*, 670 F. Supp. 2d 326 (D.Vt. 2009).  This list obviously does not include those instances where Dr. Jonas testified at the administrative hearing and there was no appeal to the district court.

[2] The Court further strongly recommends to the Commissioner that if Dr. Jonas is called to appear in any future administrative hearings that claimants be provided prior to the hearing full disclosure of his testimony and compensation history, as is being required by this Court in this matter.

**REVERSES** the decision of the Commissioner based, independently and collectively, on the failure of any fact finder to weigh and reconcile the new and material medical evidence contained in the November 19, 2012 correspondence and the failure to properly evaluate expert opinions in accord with the Treating Physician Rule; and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g). Because of the protracted nature of these proceedings, now more than seven years since Plaintiff initially filed for disability benefits, the Court directs that an administrative hearing be conducted and an administrative decision be issued within 120 days of this order.

    AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

August 12, 2015
Charleston, South Carolina